[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 308 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 309 
¶ 1. Thomas Taylor, fifty-five years of age, was convicted of capital rape in the Circuit Court of Lowndes County, Mississippi and sentenced to life imprisonment. His court appointed attorney appeals the conviction on three assignments of error. Taylor, filing a supplemental pro se brief, appeals on thirty-three assignments of error.
 FACTS
¶ 2. Thomas Taylor, also known as "Tinker," was convicted of the rape of an eight year old girl. The rape occurred on January 3, 1997. At the time of the incident, he had been living in the child's home along with the child's mother, stepfather, and three younger sisters. Testimony failed to establish exactly when Taylor had moved in with this family, but it was clear that he had moved in at some time between Thanksgiving and Christmas of 1996.
¶ 3. The child testified that on the night of the rape she woke up and went to the kitchen to get some water. Taylor was in the kitchen, and he took her into his bedroom where he raped her. Her mother was not home and her stepfather and younger sisters were asleep. After the rape he told her not to tell anyone what had happened. She did not tell her mother because she was afraid. The child's mother testified that on January 11 the child was crying and complained that "her privates were sore and had some bumps." The mother took her to the emergency room of a local hospital to see a doctor. The physician who examined her testified that the child's hymenal ring was more dilated than normal for a child of that age, which was consistent with penetration. He also testified that she had multiple ulcerations on the vagina and a heavy discharge characteristic of herpes. Her test for herpes was positive. The child said nothing to the doctor or her mother about having been raped. After leaving the hospital, the child's mother asked her if anyone had been "messing with her", and she answered that Thomas had. The mother called the police and reported the rape.
¶ 4. An investigator from the Columbus Police Department testified that he interviewed the child and her mother on January 11, 1997, and arrested Thomas Taylor after the interviews. The investigator testified that two of the child's aunts had made statements to him prior to this incident about sexual abuse of the child by the stepfather. These statements were determined to be hearsay and were not allowed into evidence. The women could not be located to testify. The investigator said that the two women had filed a complaint with the Department of Human Services ("DHS"), but that the child had denied to him that her stepfather had sexually abused her. A witness for the DHS stated that there had been six complaints filed against this family but that only two were in regard to sexual abuse. The first complaint for sexual abuse of this child was *Page 310 
filed on December 6, 1996. The stepfather was the subject of that investigation. A social worker from the DHS interviewed the child and her younger sister separately at school, as well as the school counselor, regarding these allegations and found no evidence of abuse and no reason to take the investigation any further.
¶ 5. The child testified at trial that she had never told her aunts, while she was visiting one of them in Alabama, that her stepfather had been having sex with her and that she did not want to go home. The mother also testified that the child had never accused the stepfather of sexual abuse. Other evidence established that Thomas Taylor and the stepfather both tested positive for herpes on January 31, 1997.
¶ 6. After hearing the evidence, Thomas Taylor was convicted of capital rape and sentenced to life imprisonment.
 ISSUES AND DISCUSSION OF THE LAW I. THE TRIAL COURT DID NOT ERR IN NOT ALLOWING INTO EVIDENCESTATEMENTS MADE BY UNAVAILABLE WITNESSES.
¶ 7. The defense had issued subpoenas for the child's two aunts. One aunt lived in Alabama and was beyond the jurisdiction of the court, and the other could not be located. In their absence, the defense sought to introduce into evidence statements that the aunts had made to the Columbus Police Department prior to the attack on the child on January 3, 1997. The aunts claimed in these statements that the child had told them that she was being sexually abused by the stepfather. The trial court determined that these statements were irrelevant in determining whether or not Thomas Taylor had raped the child on January 3, 1997, and refused to admit the statements into evidence. Taylor assigns this denial as error.
¶ 8. Taylor cites that Mississippi Rule of Evidence 804(b) provides that former testimony is not excluded by the hearsay rule if the declarant is unavailable as a witness. His authorities, McMastersv. State, 83 Miss. 1, 35 So. 302 (1903); Smith v. State,247 So.2d 705 (Miss. 1971); Lee v. State, 124 Miss. 398, 86 So. 856 (1921), are all inapplicable to this case since they apply only to the admissibility of former testimony. The statements provided by the aunts were not sworn statements. It has been well established in this state that arguments unsupported by authority will not be considered on appeal. Harris v. State, 386 So.2d 393, 396 (Miss. 1980); Kelly v. State, 553 So.2d 517, 520 (Miss. 1989). InHarris v. State, 386 So.2d at 396 (quoting Ramseur v. State,368 So.2d 842, 844 (Miss. 1979)), the Court said: "Where assignments of error are unsupported by argument and authority, the Court does not, as a general rule, consider them."
¶ 9. In addition to this procedural bar, this assignment of error fails on merit. The statements of the unavailable witnesses were hearsay and did not fit into any of the exceptions of M.R.E. 804(b), which exclude from hearsay former testimony, statements made under belief of impending death, and statements against interest. The statements also do not fall under any other hearsay exception. M.R.E. 804(b)(5) provides that statements which do not fall within the other recognized exceptions may be admitted into evidence as an exception if the court determines:
 (A) the statement is offered as evidence of a material fact;
 (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
 (C) the general purposes of these rules and the interests of justice will best be served by admission of the statements into evidence.
¶ 10. The court has held before that statements of unavailable witnesses may be admitted under this provision of the rule *Page 311 
where they were relevant to a material issue in the trial. Butler v.State, 702 So.2d 125, 127 (Miss. 1997). The aunts's statements do not fall into this catch-all exception. Whether or not the child told her aunts that her stepfather was sexually abusing her before she was raped has nothing to do with whether or not Taylor took her into his bedroom and raped her on January 3, 1997. The statements by the aunts do not satisfy any of the subsections of the rule. The general purposes of the rules and the interests of justice would not have been served by the admission of this irrelevant information, and the trial court was correct in excluding it.
II. THE REMARKS MADE DURING CLOSING ARGUMENT BY THE STATE'SATTORNEY WERE WITHIN THE LATITUDE ALLOWED FOR CLOSING ARGUMENT.
¶ 11. The contested remark made by the district attorney during closing argument was "People who do this — this is a crime of opportunity. They do it when there's not people around and they do it to the most helpless of — the community." Taylor asserts that this comment is not based on the facts presented as evidence. He claims that arguing statements of fact that are not in evidence or necessarily inferable from evidence that are prejudicial to the defendant is error. However, these remarks were supported by the evidence and were well within the latitude allowed for closing argument. Taylor took the opportunity of raping an eight year old child during the night when no one was around. She was certainly one of the most helpless in the community.
¶ 12. Courts have consistently upheld the wide latitude that attorneys are allowed in closing arguments. Comments by prosecutors which were much more detrimental to the defense have been held not to be reversible error in prior decisions of the Mississippi Supreme Court. For example, the court in Stringer v.State, 500 So.2d 928, 939-40 (Miss. 1986), upheld a comment that the defendant would be a danger to society if he did not receive the death penalty. A comment that a jury's failure to convict a defendant would open the door for other children to be abused has also been upheld. Monk v. State, 532 So.2d 592, 600-01 (Miss. 1988). Reversal is not merited unless the remarks by the prosecuting attorney during closing argument create "unjust prejudice against the accused resulting in a decision influenced by prejudice." Johnson v. State, 596 So.2d 865, 869 (Miss. 1992); Ormond v. State, 599 So.2d 951, 961 (Miss. 1992); Dunawayv. State, 551 So.2d 162, 163 (Miss. 1989). In this case the jury's verdict was not prompted by prejudice, but by solid evidence, and this error fails on the merit.
¶ 13. It should also be noted that the defense did not object to the prosecutor's closing argument, and the issue has therefore not been preserved for appeal. See Hunter v. State, 684 So.2d 625, 637 (Miss. 1996); (citing Foster v. State,639 So.2d 1263, 1288-89 (Miss. 1994)) ("[I]t is incumbent on defense counsel to raise a proper objection when the offensive language is uttered or waive appellate review of the issue."). This assignment of error is thus procedurally barred.
III. THE TRIAL COURT DID NOT ACCEPT A GUILTY VERDICT AGAINST THEWEIGHT AND SUFFICIENCY OF THE EVIDENCE.
¶ 14. Taylor's argument that the Court accepted a guilty verdict against the weight of the evidence has been ruled on by the Mississippi Supreme Court in numerous cases. The defense claims that the State's evidence, based primarily on the word of a victim who is a young child, is not sufficient for conviction. This State's supreme court has always held that the unsupported word of the victim of a sex crime is sufficient for conviction, unless it is substantially contradicted by other credible testimony or physical facts. The court in Christian v. State, 456 So.2d 729
(Miss. 1984), affirmed a conviction where there was no evidence of external *Page 312 
injury and only the word of the prosecutrix to prove guilt. In Otisv. State, 418 So.2d 65 (Miss. 1982), the victim was a fifteen year old mentally impaired girl who did not report the rape for five weeks. There was no physical evidence, and the court found that her word was sufficient.
¶ 15. This case presents no material contradiction to the child's testimony, and that testimony was corroborated. The child's mother testified that she took the child to the doctor because the child's vaginal area was sore and "had some bumps." The doctor testified that the child had genital herpes, a sexually transmitted disease, and that her hymenal ring was dilated more than normal for a child her age, indicating penetration. The defendant's efforts to convince the jury that the child had accused her stepfather of sexual abuse prior to this incident were totally irrelevant to the issue of whether or not Taylor had raped her on January 3, 1997. This is the only issue before the jury. The child testified that the person who took her into a bedroom on the night of January 3 and raped her was the defendant, Thomas Taylor, and the jury believed her. The Mississippi Supreme Court has held repeatedly that the credibility of a witness is a matter for the jury. Anderson v. State, 461 So.2d 716, 719 (Miss. 1984);Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983); Billiot v.State, 454 So.2d 445, 463 (Miss. 1984).
¶ 16 . In Allman v. State, 571 So.2d 244 (Miss. 1990), the defendant asked for a jury instruction that the uncorroborated word of the child victim was insufficient. The court upheld the trial judge's refusal of that instruction as an incorrect statement of law. Numerous cases hold that a rape victim's uncorroborated testimony alone is sufficient where it is consistent with the circumstances. Goss v. State,465 So.2d 1079, 1082 (Miss. 1985); Barker v. State, 463 So.2d 1080, 1082 (Miss. 1985); Blade v. State, 126 So.2d 278, 280 (Miss. 1961);Buchanan v. State, 83 So.2d 627, 630 (Miss. 1955).
¶ 17. In Allman, the court said:
 It is not our function to determine whose testimony to believe. Thomas v. State, 495 So.2d 481
(Miss. 1986); Anderson v. State, 461 So.2d 716 (Miss. 1984); and Groseclose v. State, 440 So.2d 297 (Miss. 1983). We will not disturb a jury's finding on conflicting testimony where there is substantial evidence to support the verdict. Billiot v. State, 454 So.2d 445 (Miss. 1984); Thomas v. State, 495 So.2d 481 (Miss. 1986). Furthermore the evidence is considered by this Court in the light most favorable to the verdict. Fisher v. State, 481 So.2d 203
(Miss. 1985), and Inman v. State, 515 So.2d 1150 (Miss. 1987) (quoting Pinson v. State, 518 So.2d 1220, 1224 (Miss. 1988)). The jury's verdict in this case is given great deference. The purpose of our justice system in allowing a minor to testify in a case such as the one at hand is to hear what she has to say and let the jury weigh her testimony, together with all the other witnesses. We hold the jury's verdict was not against the overwhelming weight of the evidence and this assignment of error is without merit.
Allman, 571 So.2d at 253.
¶ 18. The court's holding in Allman should be controlling here. The evidence was sufficient for conviction; the verdict was supported by the weight of that evidence.
 SUPPLEMENTAL PRO SE ISSUES
¶ 19. The issues addressed above were the errors filed in Taylor's appellant brief filed by counsel. In addition to this brief, he was granted permission to file an additional supplemental pro se
brief to "raise any issues not raised by counsel." Many of the issues in the supplemental brief were not raised by counsel in the appellant's brief because to do so would have perpetrated a fraud on the Court, and the attorney could have been sanctioned in accordance with Rule 3.3, Mississippi Rules of Professional Conduct. This additional *Page 313 
brief assigns as errors for the Court thirty-three issues which are addressed below.
I. TAYLOR'S RIGHT TO A SPEEDY TRIAL WAS NOT VIOLATED.
¶ 20. Taylor claims that his conviction must be reversed because of violations of Sixth Amendment rights to a speedy trial. Taylor's rights were not violated according to the prevailing law of this state.
¶ 21. The rape occurred on January 3, 1997. Taylor was arrested on January 11, 1997 and indicted on May 9, 1997. A trial date was set for the next term of court, September 2, 1997. All continuances between that time and the commencement of trial on February 10, 1998 were caused by the defendant's arguments with his court appointed counsel and his efforts to have first one and then the other attorney dismissed. When the familiar four-prong test set by the United States Supreme Court in Barker v. Wingo, 407 U.S. 514, 530 (1972), and adopted by the Mississippi Supreme Court in Wellsv. State, 288 So.2d 860, 862 (Miss. 1974), is applied to the present case, it is apparent that Taylor's contention fails. The four Barker factors are: the length of the delay, the reason for it, the prejudice resulting from the delay, and the assertion of the right to a speedy trial. Barker, 407 U.S. at 530. These are addressed separately below.
¶ 22. The constitutional right to a speedy trial attaches at the time when the defendant is first accused of the crime. Perry v.State, 419 So.2d 194, 198 (Miss. 1982). The length of time between Taylor's arrest and the trial was approximately thirteen months. This is more than the eight months said to be "presumptively prejudicial" by the court in Smith v. State,550 So.2d 406, 408 (Miss. 1989), and calls for the application ofBarker. The facts show that there was no inordinate or unnecessary delay in bringing Taylor to trial. He was indicted by the first grand jury convened following his arrest, and his trial was set for the next term of court. The only continuances were caused by a joint motion for additional time to get medical evidence, by Taylor's efforts to have his court appointed attorney dismissed, and by his bar complaint filed against her. The prosecution was not responsible for the delays in bringing Taylor to trial.
¶ 23. The reason for the delay is the second factor to be considered in determining whether Taylor's right to a speedy trial was violated. Taylor was arraigned on May 20, 1997. His court appointed attorney, Donna Smith, filed numerous motions on his behalf in May and June. These motions include a request for discovery on May 27, a motion for the defendant to be examined for mental competency on June 9, a motion for funds to purchase civilian clothes for the defendant on June 9, and a motion for funds to hire a pathologist on June 13. Regardless of Ms. Smith's efforts on his behalf, Taylor filed a pro se motion for new counsel and a myriad of other handwritten motions from the county jail on June 22, 1997, claiming that he had "no attorney's help." Included in the pro se motions was a motion for a "fast and speedy trial."
¶ 24. Taylor also filed a bar complaint against Ms. Smith. Because of that complaint, Ms. Smith filed a motion to withdraw on June 30, 1997 "as said filing places counsel and client in an adversary relationship." Ms. Smith's motion was not heard by the court at that time, and she continued to represent Taylor. The first continuance that was granted in the case was on August 28, 1997. It was jointly requested by the state and the defendant because the medical evidence was incomplete. Trial was set for November 17, 1997. Again on September 2, 1997, Taylor filed a pro se motion to "stop court prejudice and appoint new counsel," along with several other pro se motions.
¶ 25. There is nothing in the record explaining why trial was not held as scheduled on November 17, but the record does *Page 314 
show a copy of the second bar complaint filed by Taylor against Ms. Smith on November 18, in which he claims that the trial had been continued five times without his consent. This is not supported by the record. On December 2, 1997, the trial court issued an order allowing Ms. Smith to withdraw as counsel and appointing Armstrong Walters as the new attorney. Trial was re-set for February 10, 1998 and was held on that date. During that time, Taylor also filed a motion for Judge Lee Howard to recuse himself. As shown above, the only continuance of record was on a joint motion by the prosecution and the defense. The delay from the November 17, 1997 date set for trial and the February 11, 1998 trial date was caused by the continued complaints by Taylor about his counsel and his efforts to have new counsel appointed.
¶ 26. Though Taylor did file a pro se motion on June 22, 1997 asking for a speedy trial, his actions between then and the time of trial caused the delay. He asserted his right in the motion but the record does not show that he brought it to the attention of the trial court. The record shows that he was assertive regarding other issues at the trial, especially the "ineffectiveness" of his counsel, but he took no opportunity to raise the issue of his right to a speedy trial. The record shows that the trial court was of the opinion that the purpose of Taylor's actions in trying to dismiss his counsel at the trial was to further delay the trial.
¶ 27. In assessing the fourth factor in Barker, prejudice to the defendant, the court said that it should be assessed in light of the interests to the defendant which the right to speedy trial was designed to protect. The court identified three such interests: preventing pretrial incarceration, minimizing anxiety and concern of the accused, and limiting the possibility that the defense will be impaired. Barker, 407 U.S. at 532. Taylor was incarcerated throughout the pretrial period but was given credit for the time served. He has therefore spent no more time in jail than he would have spent had the trial been earlier. He has made no claim of any particular anxiety or concern. He does claim that his defense was impaired because two defense witnesses would have been available if the trial had been held on the first trial date. This issue of the missing witnesses has been discussed and does not need to be repeated, but the record shows that even if the witnesses had been available, they would not have been able to give any relevant and admissible testimony. Taylor has demonstrated no prejudice from the missing witnesses.
¶ 28. This state recognizes that the defendant is not compelled to make an affirmative showing of prejudice in order to prove a denial of the constitutional right to a speedy trial. Flores v.State, 574 So.2d 1314, 1323 (Miss. 1990). While the presumptive prejudice of "inordinate delay" is recognized, see Barker, 407 U.S. at 537, the Mississippi Supreme Court has refused to reverse and discharge a defendant who suffered no actual impairment in the conduct of his defense from a delayed trial. Spencer v. State,592 So.2d 1382, 1390 (Miss. 1991); Stogner v. State,627 So.2d 815, 819 (Miss. 1993).
¶ 29. The thirteen month time period was long enough to trigger an analysis of the other factors in Barker. The first delay was caused by the unavailability of medical evidence and was jointly requested by the defense and the prosecution; the second was caused by Taylor's inability to work with his court appointed counsel. The defendant asserted his right to a speedy trial in a pro se motion, but did not assert it in the trial court, and he has no discernable prejudice other than time spent in jail for which he was given credit on his eventual prison sentence. There is nothing in this analysis which would warrant or justify a reversal. *Page 315 
II. TAYLOR'S RIGHT TO FILE A SUPPLEMENTAL PRO SE BRIEF HAS BEENRECOGNIZED.
¶ 30. On December 1, 1998, the Court of Appeals issued an order that the supplemental brief filed by Taylor on September 14, 1998 would be considered by the Court. It is that brief to which this Court responds.
III. TAYLOR HAD CIVILIAN CLOTHES AVAILABLE AND WOULD NOT WEAR THEM
¶ 31. Taylor filed a motion prior to trial to have the trial court provide funds for civilian clothes for him to wear during trial. The record reflects that civilian clothes were available to Taylor, and he refused to wear them. When Taylor appeared on the morning of the trial in his orange jail suit, the defense attorney informed the judge that Taylor had refused to put on his civilian clothes at the sheriff's office. Also, when Taylor was transported to the courthouse in his orange jail uniform, his defense attorney presented to him civilian clothes kept there for court appointed public defender clients who did not have civilian clothing. The attorney reported that Taylor, in the presence of George Snyder, declined to wear those clothes. The record shows that the judge did not, as Taylor claims, "compel an incarcerated accused to stand trial in prison garb." A reviewing court cannot consider anything which is not included in the record before it. Smith v.State, 572 So.2d 847, 849 (Miss. 1990). Taylor's claim that the court erred in not providing him with civilian clothes for trial is without merit and truth
IV. TAYLOR'S CLAIM THAT HE WAS REQUIRED TO APPEAR IN COURT WITHOUTCOUNSEL IS NOT SUPPORTED BY THE RECORD.
¶ 32. There is nothing in the record that indicates that Taylor was required to appear in court without representation by counsel. The record only supports that when Taylor was arraigned his court appointed attorney sent someone in her stead to represent Taylor. He also claims that the court erred in giving his attorney the "run of the court" and granting continuances to the defense attorney without his consent. This too is not supported by the record. A reviewing court cannot consider anything which is not included in the record before it. "The result of appellant's failure to present a full record is that the presumption of correctness stands unrebutted." Smith, 572 So.2d at 849. As a general rule, a court does not consider assignments of error where they are not supported by argument. Ramseur, 368 So.2d at 844.
V. THE COURT DID NOT ERR IN APPOINTING ANOTHER ATTORNEY FOR THEDEFENDANT AFTER THE FIRST WITHDREW AS HIS COUNSEL.
¶ 33. Taylor filed a bar complaint against his first court appointed attorney, and she was allowed to withdraw as counsel. He claims that he was not notified of his right to obtain other counsel or to represent himself when another public defender was appointed to defend him and that the court "forced another attorney on him." Taylor cites no authority for this. See Harrisv. State, 386 So.2d at 396. Unsupported by authority, the issue is not properly before the Court for review.
¶ 34. Additionally, at the time of the appointment of the second counsel, Taylor's indigence had already been established, and he had already invoked his right to counsel. He now claims that he, who claimed that because of his indigence the court should have provided him with civilian clothes, as discussed in Issue Three, should have been informed that he had the right to hire private counsel. He was informed of this before his first counsel was appointed; if he had wanted to hire private counsel, he had the opportunity to so inform the trial court. The record shows that Taylor filed two pro se motions from the Lowndes County jail requesting *Page 316 
that the court appoint new counsel for him. In the first motion he asked for new counsel, and in the second he asked for counsel experienced in capital cases. The trial court did appoint one experienced in the defense of capital cases. While an indigent is entitled to competent counsel to defend him, he is not entitled to court appointed counsel of his own choosing. U.S. v. Mills,895 F.2d 897, 904 (2nd Cir. 1990) (citing Morris v.Slappy, 103 S.Ct. 1610, 1617 (1983); Wheat v. U.S., 108 S.Ct. 1692, 1700 (1988)). In addition to the procedural bar, there is no merit to this assignment of error.
VI — VII. THE COURT DID NOT ERR IN DECIDING THAT TAYLOR COULD NOTCOMPLETELY REPRESENT HIMSELF AT TRIAL.
¶ 35. Taylor claims that his rights were violated when the trial court denied his request to dismiss his attorney and allow him to represent himself at trial. In the same argument, he says that he never waived his right to counsel. The trial judge spelled out in detail in the record why he did not dismiss Taylor's counsel on the defendant's request and why he found that Taylor was not competent to represent himself. The record shows that the trial judge noted at length that he was following the directives of the Mississippi Supreme Court in Howard v. State, 701 So.2d 274
(Miss. 1997), in which the same trial judge was reversed for allowing the defendant to represent himself without a determination of competency. The trial court in the present case followed Howard in finding that Taylor did not have the "training, skill or knowledge necessary to render competent legal assistance to himself or to conduct the trial."
¶ 36. The trial court, however, also recognized the constitutional right of the defendant, also citing Howard, to participate in his own defense, specifically granting the defendant's request that he be allowed to cross-examine witnesses for the State. See Armsteadv. State, 716 So.2d 576, 581 (Miss. 1998). The trial court was correct in following precedent, even though, as he stated into the record, he would have let Taylor conduct his own defense had it not been for Howard.
VIII — IX. TAYLOR HAS NO CLAIM IN ASSERTING THAT HE WAS ARRESTEDWITHOUT A WARRANT AND PROBABLE CAUSE.
¶ 37. Taylor claims that he was arrested without a warrant and with no probable cause and that he was not taken before a magistrate. Since these allegations are not found in the record and were not raised at trial they are doubly barred from consideration on appeal. A trial court cannot be put in error on a matter which was not put to it for decision. Crenshaw v. State, 520 So.2d 131, 134 (Miss. 1988); Howard v. State, 507 So.2d 58, 63 (Miss. 1987).
X. THE COURT DID NOT ERR IN NOT GRANTING THE DEFENDANT'S ORALMOTION FOR A DISMISSAL.
¶ 38. Taylor argues that the trial court erred in not granting his "oral motion" at the close of his preliminary hearing. There is no transcript of the preliminary hearing in the record and nothing upon which this Court can ascertain that an oral motion was made or denied by the trial court. Therefore, it cannot be considered. A reviewing court cannot consider anything which is not included in the record before it. Smith, 572 So.2d at 849.
XI. THE INDICTMENT IS VALID.
¶ 39. Taylor claims that he was tried under an invalid indictment because it was amended to show a different age of the victim. Nothing in the record supports this claim, nor was it raised at trial. The record shows one indictment charging Taylor with the carnal knowledge of the child, "a child under fourteen (14) years." This issue is barred as not supported by the record and not raised at trial. A trial court cannot be put in error on a matter which was not put to him for decision. *Page 317 Crenshaw, 520 So.2d at 134 ; Howard, 507 So.2d at 63 .
¶ 40. Taylor has other parts to this argument concerning the validity of the indictment, but they are incomprehensible and are barred by not having been brought to the attention of the trial court.
XII — XIII. THE COURT DID NOT ERR IN CONDUCTING VOIR DIRE.
¶ 41. Taylor tried to dismiss his attorney and conduct his entire defense pro se. The denial of this motion is argued in Issues XI and XII above. Taylor now argues specifically that he was not permitted to participate in voir dire or in jury selection. The record shows that after the trial court made the determination that Taylor was not capable of dismissing his attorney and conducting his entire trial pro se, Taylor asked only to be allowed to cross-examine the State's witnesses. This was allowed. Taylor never asked to be allowed to participate in voir dire.
Since this Court finds that the trial court did not err in not allowing Taylor to dismiss his attorney and handle his entire defense pro se, there is no error here.
XIV. THE COURT'S JURY INSTRUCTIONS WERE CORRECT. TAYLOR'S RIGHT TOPARTICIPATE IN THE TRIAL IS ADDRESSED ELSEWHERE.
¶ 42. The jury instruction contested by Taylor in this appeal, but not at trial, reads, "The victim's resistance, or lack of resistance, is not relevant to your consideration, because a female child under the age of fourteen years cannot legally consent to the act of sexual intercourse." This is a correct statement of law. This State has always held that when a child is under the statutory age of consent that consent is not a factor. In Collins v. State, 691 So.2d 918 (Miss. 1997), the appellant argued that his act of sex with a thirteen year old girl was consensual and that she had told him that she was nineteen. The court rejected this argument and upheld the conviction. TheCollins court stated:
 This Court has held that capital rape does not require that the act be "forcefully done against the will of the child." McBride v. State, 492 So.2d 581, 584 (Miss. 1986). Rather, we stated, "(t)he child was under the age of consent, and it was not material whether the rape was accomplished by force or violence and against the will of the child." Consent is no defense to the charge. (citations omitted).
Collins, 691 So.2d at 924.
¶ 43. The instruction was in accord with the law, and there was no error in submitting it to the jury. Taylor supports his argument that the jury instruction was in error by citing Simmons v. State,105 Miss. 48, 61 So. 826 (1913) as precedent on the issue. This case is of no value on this issue as shown by the fact that it has not been cited by the Mississippi Supreme Court with approval in the 86 years since the decision. Whatever the law may have been in 1913, it is clear that the current law makes sexual intercourse with a child under the age of fourteen years rape, whether or not the child consents.
¶ 44. Taylor also argues that the trial court erred in not allowing him to submit his own pro se instructions to the jury and in not giving him a copy of the instructions. The record shows that Taylor had a copy of the instructions submitted by the prosecutor and the defense attorney prior to any discussion regarding the instructions. Though he did not have a copy of the standard instructions given to the jury by the court, he was provided a copy as soon as he requested one. Although Taylor filed numerous pro se motions prior to trial, he did not offer any pro se instructions to the jury. The trial judge did not deny him the right to submit his own instructions; the matter never arose. There is no error on this issue.
XV — XVI. THE COURT DID NOT ERR IN DENYING TAYLOR'S PRO SE MOTIONSFOR AN INVESTIGATOR AND A PATHOLOGIST. *Page 318 
¶ 45. Prior to trial Taylor filed two pro se motions for an investigator and a pathologist. There is nothing in the record showing that these motions were brought to the attention of the trial court prior to trial. The party filing a motion has the duty to bring the motion to the attention of the trial judge and request a hearing on it. Lambert v. State, 518 So.2d 621, 623 (Miss. 1987); Billiot v. State, 454, So.2d 445, 456 (Miss. 1984).
¶ 46. In addition to not preserving this alleged error for appeal by properly presenting it to the trial court prior to trial, Taylor has cited no authority for his argument that he was entitled to an investigator or pathologist at county expense. SeeHarris v. State, 386 So.2d at 396. Unsupported by authority, the issue is not properly before the Court for review.
¶ 47. Taylor would have lost this argument on the merits even if it had been preserved for appeal. The standard for review in this State requires that to reverse, the trial court's denial of expert assistance must be an abuse of discretion so egregious as to deny due process rendering a trial fundamentally unfair. Fisher v. Cityof Eupora, 587 So.2d 878, 883 (Miss. 1991); see Johnson v. State,529 So.2d 577, 590 (Miss. 1988). "Undeveloped assertions" that expert assistance will be helpful are insufficient. Griffin v.State, 557 So.2d 542, 550 (Miss. 1990); Hunt v. State,687 So.2d 1154, 1161 (Miss. 1996). Taylor has not shown that the services of an investigator or pathologist would have changed the outcome of the trial in any way.
XVII. THE COURT WAS NOT IN ERROR IN DENYING A DIRECTED VERDICT.
¶ 48. Taylor's denial of a directed verdict was an issue in the original appellant's brief filed by counsel and is not properly before the Court in the supplemental brief. Taylor was allowed by this Court to file a supplemental brief raising issues not raised in his counsel's brief.
XVIII. THE COURT DID NOT ERR IN NOT ALLOWING AN ALIBI.
¶ 49. Taylor alleges that he filed a notice of alibi and assigns as error that the trial court did not allow him to prove his alibi defense. The record does not show that Taylor ever attempted to present an alibi defense, nor does it show a valid notice of alibi. URCCC 9.05 provides that the written notice of alibi served upon the prosecutor shall "state the specific place or places at which the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses upon which the defendant intends to rely to establish such alibi." Taylor's "notice of alibi" did not meet any of these requirements. It was a request for the prosecutor to disclose the names of witnesses he expected to use to rebut Taylor's alibi, but no alibi and no witnesses to support such an alibi were given. There was no information for a hearing, even had the motion been called to the attention of the trial court, and there is nothing in the record showing that it was brought to the judge's attention at any time prior to trial. This error is without merit.
XIX. THE COURT DID NOT ERR IN NOT ALLOWING TAYLOR TO SUBMITDOCUMENTS INTO EVIDENCE ALLEGING PRIOR FALSE STATEMENTS BY AWITNESS.
¶ 50. Taylor was allowed by this Court to file a supplemental brief raising issues not raised in the brief filed by his court appointed counsel. This issue was raised in the original appellant's brief as Issue I and is not properly before the Court.
XX. TAYLOR HAD OPPORTUNITY FOR ALL REQUESTED DISCOVERY.
¶ 51. Taylor claims that he was not given discovery by the State to show that the child's stepfather had tested positive for herpes. The record shows that the defendant did have this information prior to trial and introduced it during trial. A trial court cannot be put in error on a matter *Page 319 
which was not put to him for decision. Crenshaw v. State, 520 So.2d at 134 ; Howard v. State, 507 So.2d at 63 . The record does not support this argument.
XXI. THE COURT DID NOT IMPROPERLY DENY A PRELIMINARY HEARING.
¶ 52. Taylor charges the court with lying about his pro se waiver of a preliminary hearing. The docket shows a pro se waiver was filed on August 18, 1997. However, Taylor's right to a preliminary hearing was automatically waived since an indictment was issued for him on May 9, 1997. Mayfield v. State, 612 So.2d 1120, 1129 (Miss. 1992), held that "once a defendant has been indicted by a grand jury, the right to a preliminary hearing is deemed waived."See also Shields v. State, 702 So.2d 380, 383 (Miss. 1997).
XXII. THE VERDICT WAS NOT AGAINST THE WEIGHT OF THE EVIDENCE.
¶ 53. Taylor was allowed by this Court to file a supplemental brief raising issues not raised in the brief filed by his court appointed counsel. The sufficiency and weight of the evidence was thoroughly addressed in the original appellant's brief and is not properly before the Court in the supplemental brief.
XXIII — XXIV. THE COURT DID NOT ERR IN ESTABLISHING TAYLOR'S AGEAND THAT OF THE VICTIM.
¶ 54. Taylor claims that the State did not establish his age or that of the victim, both of which are elements of the crime of capital rape. The record shows that the age of the defendant was established without objection by the testimony of the arresting officer, Selvain McQueen. The age of the victim was established by her own testimony. There in no merit to these assignments of error.
XXV. THE COURT DID NOT ERR IN ADMITTING THE TESTIMONY OF THEVICTIM.
¶ 55. The child gave her own account to the jury of the events of the night when she was raped by Thomas Taylor. This did not constitute hearsay. Taylor cites authorities that have no application to this case. It has been well established in this state that arguments unsupported by authority will not be considered on appeal. Harris v. State, 386 So.2d at 396. This assignment of error is totally without merit.
XXVI. THE COURT DID NOT ERR IN NOT ALLOWING WITNESSES TO RETESTIFY.
¶ 56. Taylor makes no legal argument and cites no authority to support this issue. See Harris v. State, 386 So.2d at 396. Unsupported by authority, the issue is not properly before the Court for review.
XXVII. THE COURT DID NOT ERR IN ADMITTING THE HEARSAY TESTIMONY OFTHE INVESTIGATOR.
¶ 57. Taylor has withdrawn this issue as an error and agrees that the lower court was correct in admitting the testimony of Sgt. McQueen.
XXVIII. THE COURT DID NOT ERR IN ADMITTING THE TESTIMONY OF THEVICTIM'S MOTHER.
¶ 58. Taylor says that the trial court erred in allowing the victim's mother to repeat to the jury her conversation with her child about the rape. Since there was no objection to the testimony during trial, the issue is not properly before the Court. Hearsay which brings no objection, once received by the court and presented to the jury, becomes competent evidence and may aid in supporting the verdict the same as any other competent evidence. Veal v. State, 585 So.2d 693, 697 (Miss. 1991); As the court said in Jones v. State, 606 So.2d 1051, 1058 (Miss. 1992):
 A trial judge will not be found in error on a matter not presented to him for decision. Crenshaw v. State, 520 So.2d 131, 134 (Miss. 1988); Ponder v. State, *Page 320 335 So.2d 885, 886 (Miss. 1976); Howard v. State, 507 So.2d 58,63 (Miss. 1987).
¶ 59. Even if there had been an objection, the mother's testimony that the child told her that Taylor had "messed" with her could have been admitted as an exception to hearsay under MRE 803(25), the tender years exception. This issue is barred procedurally as well as on the merits.
XXIX. THE COURT DID NOT ERR IN SECURING THE ATTENDANCE OFWITNESSES AT TRIAL.
¶ 60. This issue was briefed in appellant's brief prepared by court appointed counsel and may not be raised in the supplemental brief according to the Court's order.
XXX. THE COURT DID SERVE TAYLOR WITH A PROPER INDICTMENT.
¶ 61. Taylor alleges that he was not served with a "true and correct copy of the indictment or capias." He claims that the indictment he was given was an altered or forged instrument. This is not supported by the record, has no competent corroboration, and is not supported by any legal argument or authority. A reviewing court cannot consider anything which is not included in the record before it. Smith v. State, 572 So.2d at 849.
XXXI. THE SENTENCE IS WITHIN STATUTORY LIMITS; THE COURT GAVETAYLOR THE OPPORTUNITY FOR A STATEMENT.
¶ 62. Taylor asserts that the trial court was without authority to sentence him to life for his crime. A life sentence is the only
sentence, other than death, authorized for capital rape under Miss. Code Ann. § 97-3-65(1) (Rev. 1994). The trial court followed the law in imposing a life sentence.
¶ 63. Taylor also claims that the trial judge did not allow him to give a statement prior to sentencing. The record shows an extensive conversation between the trial judge and Taylor prior to sentencing in regard to Taylor's right to appeal. There is nothing on the record indicating that Taylor inquired to make any other statement.
XXXII. THE COURT DID NOT ERR IN ADMITTING THE VICTIM'S TESTIMONY.
¶ 64. The admissibility of the child's testimony was discussed in Issues XXV and XXVIII.
XXXIII. THE COURT ALLOWED TAYLOR TO BE PRESENT DURING ALL CRITICALPARTS OF THE TRIAL.
¶ 65. As his final assignment of error, Taylor claims that he should have been allowed to sit in the courtroom while the jury was out deliberating the verdict. He also complains that he was kept out of the courtroom while the judge and jury participated in other trial proceedings of someone else. Taylor does not cite any authority in support of the novel contention that he should have been allowed to sit in the courtroom while the judge and jury were discussing another trial which had nothing to do with his case. Taylor was present at all critical stages of his own trial. At all other times, he was in custody, as and where a prisoner should be.
¶ 66. THE JUDGMENT OF THE CIRCUIT COURT OF LOWNDES COUNTY OFCONVICTION OF CAPITAL RAPE AND SENTENCE OF LIFE IN THE CUSTODY OFTHE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTSOF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P. JJ., BRIDGES, COLEMAN, DIAZ,PAYNE, AND THOMAS, JJ., CONCUR. IRVING, J., CONCURS IN RESULTONLY. *Page 321